CONOR P. FLYNN, ESQ.
Nevada Bar No. 11569
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:  702.678.5070
Facsimile:  702.878.9995
cflynn@armstrongteasdale.com

CARLOS E. DUQUE, ESQ. (*Pro Hac Vice To Be Submitted*)
EXEMPLAR LAW, LLC
4 Fanueil Hall Market Place
3d Floor, Suite 4005
Boston, MA 02109
Telephone:  617-500-3095
cduque@exemplarlaw.com

*Attorneys for Defendant*
*Learned J. Hand*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FIDELIS HOLDINGS LLC., a Nevada limited liability company; FIDELIS HOLDINGS LAS VEGAS LLC; a Nevada limited liability company; FIDELIS HOLDINGS HENDERSON LLC, a Nevada limited liability company,<br><br>                Plaintiffs,<br><br>vs.<br><br>LEARNED J. HAND, an individual,<br><br>                Defendant. | Case No.:  2:15-cv-00147-GMN-NJK<br><br>**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |

     Defendant Learned J. Hand ("Defendant" or "Hand"), by and through his attorneys of record, hereby files this Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.  In further support of his Motion, Defendant states as follows:

/ / /

/ / /

/ / /

# I

## PRELIMINARY STATEMENT

Hand first filed suit against Plaintiffs Fidelis Holdings, LLC ("FH"), Fidelis Holdings Las Vegas, LLC ("FHLV") and Fidelis Holdings Henderson, LLC ("FHH") (collectively, "Plaintiffs"), as well as their individual directors and officers (Benjamin Hoskins, Daniel Brasov and Chad Christensen, collectively the "Founding Members") in Colorado State Court for the County of El Paso on October 22, 2014 (the "Colorado Action").  Nearly two months later, on December 16, 2014, Plaintiffs instituted the instant action (the "Nevada Action," and together with the Colorado Action the "Actions") by filing claims against Hand in Nevada State Court based upon the same circumstances.  Hand removed the Nevada Action to this Court on January 26, 2015.  *See* Docket # 1.  The Complaint in the instant action, which is attached to the Notice of Removal at Docket # 1 as Exhibit A, will be referred to herein as the "NC".

In light of Hand's first filed Colorado Action, on February 6, 2015, Hand filed a motion to stay or dismiss this Action pursuant to the *Colorado River* abstention doctrine.  Docket #12.  The present Motion to Dismiss is hereby filed in the alternative, if the Court concludes that stay or dismissal pursuant to *Colorado River* is inappropriate such that the Court will continue to evaluate the merits of the case.

# II

## ALLEGATIONS DETAILED IN THE COMPLAINT

Hand is the former chief executive officer of Plaintiffs.  (NC ¶ 16).  Hand was originally hired by the Founding Members of Plaintiffs (Hoskins, Brasov, Christensen) for the purposes of assisting with various applications for licensure under Nev. Rev. Stat. 453A.  (NC ¶¶ 8, 13).  Over time, he took on greater responsibility, presented licensing applications to County commissioners, and was designated chief executive officer of Plaintiffs.  (NC ¶ 16).  Plaintiffs claim Hand was paid a $20,000 retention fee.  (NC ¶ 15).  Hand's primary responsibility was to "assist in the preparation of the required paperwork and applications" to procure licenses, such as dispensary licenses, to do business under NRS 453A in Clark County.  (NC ¶¶ 8, 11, 13).  Any additional compensation beyond the $20,000 retention fee was entirely contingent on Plaintiffs being awarded licenses by the

State of Nevada.  (NC ¶ 17).  Defendant allegedly promised that he was able and willing to do a good job but in the end submitted work product that was "grossly deficient."  (NC ¶¶ 14, 24, 25).  Presumably because of Defendant's grossly deficient work product, Plaintiffs' were not awarded any licenses by the State of Nevada.  (NC ¶¶ 29, 30).

Plaintiff FH (parent company to FHN and FHLV) has sued the State of Nevada, Department of Health and Human Services, Division of Public and Behavioral Health ("State of Nevada") for refusal to grant them the appropriate licenses, in breach of NRS 453A.  (NC ¶ 29, n.1)  Defendant has attached that Complaint to this Motion as Exhibit 1.[1]  In an affidavit submitted with that Complaint, Daniel Brasov, Founding Member of Plaintiffs, declares under oath that the "[State of Nevada]'s review, scoring and ranking process was unlawful, arbitrary, capricious, in excess of [the State]'s jurisdiction, affected by multiple errors of law, and clearly erroneous in view of reliable, probative, and substantial evidence on the whole record."  Ex. 1, p. 128, ¶ 12.

Returning to the case at bar, Plaintiffs further allege that Defendant filed the Colorado Action in a bad faith effort to interfere with Plaintiffs' business affairs.  (NC ¶ 33).  Plaintiffs seek relief against Defendant for breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, abuse of process, unjust enrichment, and negligent misrepresentation.  (NC ¶ 35-80).

### III

### STANDARD OF REVIEW

The court may dismiss a complaint for "failure to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  A properly pled complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  Although the Rule does not require the plaintiff provide detailed factual allegations, the Rule does require more than "labels and

---

[1] This Court can consider documents subject to judicial notice in a motion to dismiss.  *See, e.g.*, *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1064 n. 7 (9th Cir. 1998).  Filings in other courts may be subject to judicial notice pursuant to Fed. R. Evid. 201.  *See e.g.*, *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) ("we may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

1  conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678
2  (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 St. Ct. 2932 (1986)).  It is not enough to just give
3  fair notice of the claim and its grounds, the factual allegations "must be enough to raise a right to
4  relief above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss,
5  a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its
6  face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

7  In *Iqbal*, the Supreme Court set forth the two-pronged approach for courts to apply when
8  considering a motion to dismiss.  First, the court must accept as true all well-pled factual allegations
9  in the complaint.  *Id.* at 678-79.  However, the court need not assume the truthfulness of legal
10 conclusions.  *Id*.  The mere recital of the elements of a cause of action, supported only by conclusory
11 statements, is insufficient.  *Id.*

12 Second, the court must consider whether the plaintiff's factual allegations set forth a plausible
13 claim for relief.  *Id*.  A claim is facially plausible when the complaint alleges facts that allow the
14 court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id*.
15 Where the factual allegations in the complaint do not permit the court to infer more than the mere
16 possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is
17 entitled to relief."  *Id*. at 679 (internal quotation marks and alterations omitted).  Claims that fail to
18 cross the line from conceivable to plausible must be dismissed.  *Twombly*, 550 U.S. at 570.

19 In this case, Plaintiffs do not plead sufficient factual allegations to state plausible claims for
20 relief because they have failed to allege facts supporting *causation* and *damages*, which are elements
21 critical to all of their claims for relief.  Because their allegations as to damages are threadbare
22 speculative, and contradicted by their own pleadings in a related lawsuit filed by Plaintiffs against the
23 State of Nevada, their claims for relief must be dismissed as a matter of law.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## IV

## ARGUMENT

**A. Plaintiffs Have Failed to Adequately Plead A Claim for Intentional Interference with Prospective Economic Advantage.**

The Complaint fails to assert a proper claim against Defendant for intentional interference with prospective economic advantage. In Nevada, this particular tort possesses the following elements: "1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and, 5) actual harm to the plaintiff as a result of the defendant's conduct." *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987).

Although Plaintiffs appear to make a series of legal conclusions in an effort to state a viable cause of action, Plaintiffs fail to allege at least two vital elements: that Defendant intended to harm plaintiff by preventing a purported contractual relationship between Plaintiffs and some unknown third party.

Plaintiffs cannot allege that Defendant undertook any act to intentionally harm Plaintiffs by preventing a prospective contractual relationship. They do not even allege with <u>whom</u> that contractual relationship might have been. They merely suggest that "a prospective business opportunity exists with the passage of 453A and Plaintiffs' award of licenses from local governments." NC ¶ 55. However, Plaintiffs' prospective relationship with the State was not contractual in nature cannot be the basis for an intentional interference with prospective economic advantage claim.

Nor have Plaintiffs pleaded with particularity sufficient to satisfy *Iqbal* that Defendant's actions were the cause of actual harm to Plaintiffs. They do not even specify if or when the State became aware of the Colorado Action – the Complaint is silent as to whether or not the Complaint has been delivered to the media or state authorities and by whom.

Rather, Plaintiffs merely recite the conclusory allegation that Defendant filed a "salacious" lawsuit against Plaintiffs in El Paso County. They then baldly assert that "Plaintiffs have yet to

secure the necessary licenses to operate a dispensary in Clark County and Plaintiffs suffered, and are continuing to suffer damages as a result of Defendant's intentional actions."  (NC ¶¶ 57, 59). Plaintiffs provide no facts as to how such a filing was intended to – or actually did – harm Plaintiffs. *Id.*

Plaintiffs' factual statements that Hand filed a "salacious" lawsuit coupled with the fact that Plaintiffs have not yet been approved for licensure under 453A (denial of which Plaintiffs have appealed to the state courts of Nevada) without more does not yield an inference under *Iqbal* that Plaintiffs' filing of the Colorado Action caused the state's rejection of Plaintiffs' license applications.

Nor do Plaintiffs' allegations support an inference that the filing of the Colorado Action was intended by Defendant to inhibit their application process in Nevada.  Plaintiffs do not state that Defendant caused the Complaint in the Colorado Action to be widely disseminated through media or otherwise; they do not specify whether the Nevada authorities are even aware of the Colorado Action; and most tellingly, fail to explain why Defendant failed to publicize the document more thoroughly if it was his intention to derail Plaintiffs' license applications in Nevada.

This is the quintessential case under *Iqbal*, "[w]here the factual allegations in the complaint do not permit the court to infer more than the mere possibility of misconduct" and where the plaintiff has "alleged – but it has not shown" that it is entitled to relief. *Iqbal* at 679.  Allegations that fail to cross this threshold - from possibility to plausibility - must be dismissed. *Twombly*, 550 U.S. at 570.

Accordingly, failure to plead *intent to interfere* and *damages* are fatal to the intentional interference with prospective economic advantage claim and Count III must be dismissed.

**B. Plaintiffs' Abuse of Process Claim Also Fails State a Claim Upon Which Relief Can Be Granted.**

In Nevada, the elements of an abuse of process claim are "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding.'" *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.2d 877, 879 (2002).  At least one court applying Nevada law has found that "the mere filing of the complaint is insufficient to establish the tort of abuse of process." *Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985).

6

Plaintiffs baldly assert in the abuse of process claim that Defendant had an "ulterior purpose other than resolving a legal dispute" when he filed the Colorado Action. NC ¶ 63. This claim is followed by a conclusory allegation that "as a direct and proximate result of Defendant's acts and omissions, Plaintiffs have suffered . . . damages." NC ¶ 66. Earlier in the Complaint, in Paragraph 33, Plaintiffs allege that Defendant filed the Colorado Action in order to "intentionally interfere with Plaintiffs' further efforts to garner dispensary licenses from the Division, and disrupt the current licenses garnered from the local governments." NC ¶¶ 33.

However, no allegations are ever made indicating that Plaintiffs' were required to disclose the filing of the Colorado Action to the State of Nevada or local governments, or that they did in fact provide a copy of the lawsuit in the Colorado Action to the State of Nevada or local governments, or that the State of Nevada or local governments did in fact view the Plaintiffs' unfavorably as a result of the filing of the Colorado Action. Without allegations such as this, Plaintiffs have not adequately alleged a claim for abuse of process. Rather, as it stands, Plaintiffs have made conclusory allegations of ulterior purpose and a wrongful willful act which do not satisfy *Iqbal*. Therefore, Count IV must be dismissed.

### C. The Negligent Misrepresentation Claim Fails Because Plaintiffs' Damages for Unintentional Torts are Barred by the Economic Loss Rule.

Simply put, the economic loss rule bars recovery of purely economic losses in tort absent personal injury or property damage. *Terracon v. Mandalay*, 125 Nev. 66, 68 (2009). Purely economic loss is generally defined as "the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits. *Colloway v. Reno*, 116 Nev. 250, 257 (2000). "The primary purpose of the rule is to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Local Joint Exec. Bd. v. Stern*, 98 Nev. 409, 411 (1982). Consequently, "a plaintiff generally cannot recover on an unintentional tort claim for purely economic losses." *Sadler v. PacifiCare of Nev., Inc.*, 2014 Nev. LEXIS 133 *9 (Nev., Dec. 31, 2014) (citing *Terracon*, 125 Nev. at 73).

7

In *Terracon*, design professionals allegedly provided consulting services in a negligent manner which did not accomplish their only stated purpose – to provide a reliable structural foundation for a Mandalay Bay casino in Las Vegas. *Terracon*, 125 Nev. at 70.  There, Plaintiff sued for breach of contract, breach of covenant of good faith and fair dealing, and professional negligence. *Id.*  In addressing a certified question presented to it by the District Court, the Nevada Supreme court held that recovery for unintentional torts under the circumstances was barred. *Id.* At 79.

*Terracon* is on all fours with the case at bar.  Plaintiffs are plainly suing for the "benefit of the user's bargain . . . including pecuniary damage for inadequate value." *Terracon* at 68 (citing *Colloway*, 116 Nev. At 257).  Plaintiffs here allegedly contracted with Hand to such that he would deliver work product of sufficiently high quality to procure a license from the State of Nevada.  NC ¶¶ 13-14.  Setting aside contradictory remarks made by Plaintiffs in other cases, the State refused to grant such a license to Plaintiffs because of Hand's "grossly deficient" work product.  (NC ¶¶ 24-30).  Because Plaintiffs lost the benefit of their bargain – the State license - they want their money back, including lost profits and attorneys' fees, under various tort theories.  This is precisely the sort of recovery that the economic loss rule bars.  Rather, "the parties' disappointed economic expectations are better determined by looking to the parties' intentions expressed in their agreements." *Halcrow Inc. v. Eighth Judicial Dist.*, 302 P.3d 1148, 1153 (Nev. 2013).

Indeed, the only available remedy is that detailed in the contract which plaintiffs allege existed between the Parties. *Id.*  According to Plaintiffs, additional consideration would be provided *if* Hand were successful at procuring state licenses.  (NC ¶ 17).  He was not and therefore no additional consideration is merited.  Plaintiffs explicitly considered this possibility at the time of forming the contract – and did not bargain for a potential "claw back" of the retention bonus and instead settled for the mere withholding of the "Success Fee" in the case where the State licenses were denied.  Plaintiffs now request that this Court grant them under a negligence theory what they are not entitled to recover under the contract they themselves detail in the Complaint.  Recovery for such an economic loss must be denied as a matter of law.  For these reasons, Plaintiffs' Count VI must be dismissed.

**D. Plaintiffs Sworn Statements in a Related Case against the State of Nevada Undermine their Theory of Causation in this Case and Merit Dismissal of Count I (Breach of Contract) and Count II (Breach of Implied Covenant of Good Faith and Fair Dealing)**

In Nevada, a claim for breach of contract requires a showing of the following elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) <u>damages as a result of the breach</u>. *Cohen-Breen v. Gray TV Group, Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009) (emphasis added). A claim for breach of implied covenant of good faith and fair dealing requires a showing that one party to a contract deliberately countervened the intention and spirit of the contract in order to obtain damages. *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991). Pursuant to *Twombly,* Plaintiffs must plead <u>facts</u> that "raise a right to relief above the speculative level." *Id.* at 555.

As noted above, and as noted in Plaintiffs' Complaint, Plaintiff FH (parent company of Plaintiffs FHLV and FHH) has filed suit against the State of Nevada for failure to award it a license, an administrative action which Plaintiff claims was undertaken in breach of NRS 453A. *See* Ex. 1. The principle relief sought after in Plaintiffs' Complaint against the State is "preliminary" and "permanent" injunctive relief ordering the state to issue provisional dispensary certificates to Plaintiff FH, among others. Ex. 1, p. 23.

According to sworn testimony provided by Plaintiffs' Founding Member Daniel Brasov in that case, "the [State of Nevada]'s review, scoring and ranking process [of the licensing applications] was unlawful, arbitrary, capricious, in excess of [the State]'s jurisdiction, affected by multiple errors of law, and clearly erroneous in view of reliable, probative, and substantial evidence on the whole record." Ex. 1, p. 128, ¶ 12. In other words, Brasov alleges under oath that the applications contained substantial evidence that Plaintiffs were well qualified to receive such licenses under the standard articulated by the State and, further, that the State was legally obligated according to their own criteria, to issue said licenses to Plaintiffs. The managing partner of Plaintiffs, therefore, believes that the applications to the State of Nevada were proper and complete at the time they were

/ / /

/ / /

filed with the State.2 *Id.* Apparently, this was because the FH team was able to "step in and attempt to remedy the deficiencies in Defendant's work product so Plaintiffs could meet the submission deadlines . . . [and] that due to the work of the FH Team, Plaintiffs met the deadlines and timely submitted the Applications." NC ¶ 27-28. The FH Team was able to timely rectify Hand's "grossly deficient" work product before it was filed with the State. *Id.*

According to Plaintiffs' own pleadings, therefore, it was the State's "multiple errors of law", that lead to Fidelis' being denied a license pursuant to NRS 453A, and not any act or omission by Plaintiff. For this reason, Plaintiffs have not properly alleged a causal connection between Defendant's act or omission and an injury suffered by Plaintiffs.

Thus, Plaintiffs' claims for relief for breach of contract and breach of the implied covenant of good faith and fair dealing, which request consequential and incidental damages apparently for lost profits for not obtaining the proper licenses, do not adequately allege damages. Therefore, a requisite element of the claims has not adequately been pled, and Counts I and II should be dismissed.

### E.  The Unjust Enrichment Claim Has Not Been Adequately Pled

"The essential elements of [unjust enrichment] are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Unionamerica Mtg. v. McDonald*, 97 Nev. 210, 212, 626 P.2d 1272, 1273 (1981) (*quoting Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779, 780 (1967)). Unjust enrichment occurs "when ever [sic] a person has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mtg.*, 97 Nev. at 212, 626 P.2d at 1273.

Here, Plaintiffs have made conclusory allegations that "Defendant unjustly retained the money or property of Plaintiffs against the fundamental principles of justice, equity and good conscience." (NC ¶ 69). Even assuming the $20,000 referenced in Paragraph 15 that Hand was

---

2 The Complaint against the State of Nevada also alleges that FH did not receive a dispensary certificate "despite submitting complete applications, including the statutorily required evidence of a Special Use Permit to own and operate a Dispensary in unincorporated Clark County, Nevada." Ex. 1, p. 3, ¶ 8.

alleged to have received as part of his retention constituted the "money or property" unjustly received, it is hard to believe any set of circumstances upon which Plaintiffs would be entitled to "consequential and incidental damages" (see NC ¶ 70) for bestowing this benefit upon Hand. Indeed, the Complaint is devoid of allegations stating how the Plaintiffs would be entitled to consequential and incidental damages for conferring any such benefit.

And, as noted in the previous section, the Plaintiffs have failed to properly alleged a causal connection between Defendant's act or omission and an injury suffered by Plaintiffs. Thus, the unjust enrichment claim must be dismissed to the extent it seeks relief for consequential and incidental damages.

## CONCLUSION

Based on the foregoing, should this Court determine not to stay or dismiss this case pursuant to the *Colorado River* doctrine for reasons set forth in Defendant's Motion at Docket # 12, the Court should dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

DATED:  February 17, 2015

             ARMSTRONG TEASDALE LLP

             By:/s/*Conor P. Flynn*
               CONOR P. FLYNN, ESQ.
               Nevada Bar No. 11569
               3770 Howard Hughes Parkway, Suite 200
               Las Vegas, Nevada 89169

               CARLOS E. DUQUE, ESQ. (*Pro Hac Vice To Be Submitted*)
               4 Fanueil Hall Market Place
               3d Floor, Suite 4005
               Boston, MA 02109

               Attorneys for Defendant
               Learned J. Hand

# CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February, 2015, the foregoing **DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** was served on the party(ies) ☒ via electronic service pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures and/or ☐ by mailing a copy thereof, first class mail, postage prepaid, to:

ADAM K. BULT, ESQ.
MAXIMILIEN D. FETAZ, ESQ
Brownstein Hyatt Farber Schreck LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

Counsel for Plaintiffs Fidelis Holdings LLC, Fidelis Holdings Las Vegas LLC and Fidelis Holdings Henderson LLC

　　　　　　　　　　　　　　　　*/s/Sheila A. Darling*
　　　　　　　　　　　　　　　　An employee of Armstrong Teasdale LLP