# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

FIDELIS HOLIDNGS, LLC, a Nevada limited )
liability company; FIDELIS HOLDINGS LAS )
VEGAS, LLC, a Nevada limited liability    )     Case No.: 2:15-cv-00147-GMN-NJK
company;  FIDELIS HOLDINGS              )
HENDERSON, LLC, a Nevada limited         )     **ORDER**
liability company,                        )
                                          )
                  Plaintiffs,             )
         vs.                              )
                                          )
LEARNED J. HAND,                          )
                                          )
                  Defendant.              )
_____ )

   Pending before the Court is the Motion to Dismiss or Stay Pursuant to the *Colorado River* Doctrine (ECF No. 12) filed by Defendant Learned J. Hand ("Defendant").  Plaintiffs Fidelis Holdings, LLC; Fidelis Holdings Las Vegas, LLC; and Fidelis Holdings Henderson, LLC (collectively "Plaintiffs") filed a Response (ECF No. 15) and Defendant filed a Reply (ECF No. 21).

   Also pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 14).  Plaintiffs filed a Response (ECF No. 22), and Defendant filed a Reply (ECF No. 24).  For the reasons discussed below, Defendant's Motion to Dismiss or Stay pursuant to the *Colorado River* Doctrine is **DENIED** and Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND

   This case arises from an agreement formed between Plaintiffs and Defendant, under which Defendant became CEO of Plaintiffs in order to assist them in obtaining licenses from

Clark County, Las Vegas, and Nevada to operate medical marijuana dispensaries. (Compl. ¶¶ 11, 13–14, ECF No. 1-3).  Although Plaintiffs successfully obtained licenses from the local governing authorities of Clark County and the City of Las Vegas, Plaintiffs did not succeed in obtaining the licenses necessary to operate a medical marijuana dispensary from the State of Nevada. (*Id*. ¶ 29).  Plaintiffs allege they were unable to obtain the necessary licenses from the State of Nevada because Defendant produced a grossly deficient work product and concealed from Plaintiffs his struggles with performing his duties under the agreement. (*Id*. ¶¶ 24–25).  Plaintiffs further allege they were unable to reach Defendant to address this deficient work product prior to the application's deadline because after turning in his work, Defendant left for a vacation in Yellowstone National Park and did not return until after the application deadline had passed. (*Id*. ¶ 26).

Plaintiffs each removed Defendant as CEO on September 26, 2014. (*Id*. ¶ 31).  One month later on October 31, 2014, Defendant, filed suit against Plaintiffs in Colorado state court (the "Colorado Action"), alleging unjust enrichment, fraud, negligent misrepresentation, and breach of contract. (Colorado Action First Am. Compl. ¶¶ 67–91, ECF No. 1-4).  Pursuant to Colorado Rule of Civil Procedure 12(b)(2), Plaintiffs moved to dismiss the Colorado Action for lack of personal jurisdiction on December 19, 2014. (Colorado Action MTD, ECF No. 12-3).  The Colorado court denied Plaintiffs' Motion to Dismiss on March 4, 2015, finding the Colorado state court had jurisdiction over Plaintiffs because Plaintiffs "purposefully directed their activities toward [Defendant] as a resident of [Colorado], and [the] litigation results from alleged injuries that arise out of or relate to those activies." (Order Denying Colorado Action MTD at 2, ECF No. 21-1).  Plaintiffs then filed a Motion to Certify Order on March 18, 2015, (ECF No. 21-3); however, it is unclear whether the Colorado court has ruled on the Motion to Certify, though the parties have advised that discovery is currently proceeding in the Colorado Action and trial is scheduled for January 4, 2016. (Sec. Interim Stat. Rep. 2:17–20, ECF No. 36).

Plaintiffs initiated this action by filing their Complaint in state court on December 16, 2014, asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, abuse of process, unjust enrichment, and negligent misrepresentation.[1]  Defendant subsequently removed the action to this Court on January 26, 2015. (Not. of Removal, ECF No. 1).  Defendant filed the Motion to Dismiss Pursuant to the *Colorado River* doctrine on February 6, 2015. (*Colorado River* MTD, ECF No. 12).  In that Motion, Defendant stated the action should be dismissed or stayed pursuant to the *Colorado River* doctrine because related litigation is simultaneously taking place in Colorado state court. (*Id.* 8:18–19).  Less than two weeks later, on February 17, 2015, Defendant filed the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (12(b)(6) MTD, ECF No. 14).  In that Motion, Defendant argued Plaintiffs have not met the pleading requirements for the following causes of action: (1) intentional interference with prospective economic advantage; (2) abuse of process; (3) negligent misrepresentation; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; and (6) unjust enrichment. (*Id.* 4:19–23).

## II.    LEGAL STANDARD

### 1. The *Colorado River* Doctrine

The *Colorado River* doctrine allows a federal district court to decline to exercise its jurisdiction when there are concurrent state or federal suits, and when doing so would promote wise and sound judicial administration. *Colorado River Water Conservation Dist. v. United States*, 42 U.S. 800, 817 (1976).  The promotion of wise and sound judicial administration includes the conservation of judicial resources and the avoidance of piecemeal litigation. *Id*. However, federal courts have the "virtually unflagging obligation . . . to exercise the jurisdiction

---

[1] The parties have acknowledged that these claims are similar to counterclaims asserted by Plaintiffs as defendants in the Colorado Action. (Sec. Interim Stat. Rep. 2:13–15, ECF No. 36).

given to them." *Id.*  Therefore, "courts may refrain from deciding an action . . . only in 'exceptional cases,' and [where] 'the clearest of justifications' support dismissal." *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011).  "Only in rare cases will the presence of a concurrent state proceeding permit the district court to dismiss a concurrent federal suit 'for reasons of wise judicial administration." *Id.* at 977–78.  Further, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay or dismissal. *Intel Corporation v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

### 2. Federal Rule of Civil Procedure 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the

absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

### A.  The *Colorado River* Doctrine

Defendant's first motion seeks to dismiss or stay Plaintiffs' action under the *Colorado River* doctrine.  Defendant argues that, because similar litigation is simultaneously taking place in Colorado state court, this Court should abstain from exercising its jurisdiction over the case at bar.  The *Colorado River* doctrine provides eight factors for a federal court to weigh in determining whether a stay or dismissal of the federal court action is warranted:

> (1) whether either court has assumed jurisdiction over any property;
> (2) the inconvenience of the federal forum;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the order in which jurisdiction was obtained by the concurrent forums;
> (5) whether state or federal law controls the case at bar;
> (6) whether the state proceeding is adequate to protect the federal litigants' rights;
> (7) the desire to avoid forum shopping; and
> (8) whether the state court proceedings will resolve all issues before the federal court.

*R..R. Street & Co.*, 656 F.3d at 978–79 (citing *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002)).  Determination of the significance of these factors in any given case "rest[s] on consideration of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817.  However, both parties concede—and the Court agrees—that factors one and two are not applicable to the present case. (*Colorado River* MTD, 7:1–2, ECF No. 12); (Resp. to *Colorado River* MTD, 7:11–12, ECF No. 15).  Accordingly, the Court will only analyze the six remaining factors to determine whether it should abstain from exercising jurisdiction in this case.

### 1. Avoiding Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American International Underwriters (Phillipines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). However, where there is no certainty duplicative litigation will occur, the exceptional circumstances necessary for a stay under the *Colorado River* doctrine do not exist. *See Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) ("Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one. 'Only the clearest of justifications will warrant dismissal.'") (quoting *Colorado River*, 424 U.S. at 819).

Here, because both cases involve many of the same issues, the possibility of piecemeal litigation exists if the cases each proceed in their respective venues, particularly because Plaintiffs have raised counterclaims in the Colorado Action that are "similar" to claims raised herein. (Sec. Interim Stat. Rep. 2:17–20, ECF No. 36).  However, because it is not apparent the Colorado state court has made any rulings as to any substantive issue in the Colorado Action, there is no certainty of piecemeal litigation. *See Travelers Indemn. Co.*, 914 F.2d at 1369 (finding no clear justification for granting a stay where the state court had not made any substantive findings that the district court would have to decide anew).  Accordingly, because at this time duplicative litigation is not certain to occur, the Court finds that this factor of the *Colorado River* doctrine analysis does not weigh in favor of abstention. *See id.* ("Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one.").

### 2. Order in which Jurisdiciton was Obtained

The factor regarding the order jurisdiction is obtained "must be applied in a pragmatic, flexible manner, so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions." *American Int'l Underwriters*, 843 F.2d at 1258 (citing *Moses H. Cone Memorial*

1    *Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983)).

2            Defendant argues that the Colorado Action is "advancing quickly," implying that it is

3    proceeding faster than the present action. (Repl. to Resp. to *Colorado River* MTD 3:18–20, ECF

4    No. 21).  However, while Plaintiffs' Motion to Dismiss for Lack of Personal Jurisdiction in the

5    Colorado Action was denied and the motions to dismiss in this case are only now being

6    addressed, both actions are proceeding with discovery, meaning both courts are at the same

7    stage of litigation. *See* (Sec. Stip for Ext. Time, ECF No. 34; Sec. Interim Stat. Rep., ECF No.

8    36).  Therefore, neither action has substantially progressed passed the other, and the Court finds

9    that this factor does not weigh in favor of abstention.

10           **3. Whether Federal or State Law Controls the Case at Bar**

11           Both parties concede the claims alleged in the Complaint are state law claims. (*Colorado

12   River* MTD , 7:1–2, ECF No. 12); (Resp. to *Colorado River* MTD , 7:11–12, ECF No. 15).

13   However, the "presence of state-law issues may weigh in favor of [a] surrender [of jurisdiction]

14   only in some rare circumstances." *R.R. Street & Co. Inc.*, 656 F.3d at 980.  This case presents

15   routine issues of state contract law which this Court is more than capable of deciding.  These

16   types of issues do not present rare circumstances. *See Travelers Indemn. Co.*, 914 F.2d at 1370

17   (finding routine issues of state law do not show rare circumstances under the *Colorado River*

18   doctrine analysis).  Moreover, because the relevant state law is Nevada law, not Colorado law,

19   this Court—sitting in Nevada—is perhaps better positioned than the Colorado state court to

20   resolve the issue. *See Del Webb Corp. v. Travelers Cas. & Sur. Co.*, No. 2:10-cv-00285-LDG-

21   LRL, 2010 WL 5136012 at *5 (D. Nev., Dec. 8 2010) (finding California state courts are no

22   better situated than federal courts to interpret Nevada state law).  Accordingly, the Court finds

23   that this factor does not weigh in favor of abstention.

24           **4. Adequacy of State Court Proceeding to Protect Federal Litigant's Rights**

25           "A district court may not stay or dismiss the federal proceeding if the state proceeding

cannot adequately protect the rights of the federal litigants." *R.R. Street*, 656 F.3d at 981. However, "[t]his factor is more important when it weighs in favor of federal jurisdiction" because it "involves the state court's adequacy to protect federal rights." *Travelers Indemn Co.*, 914 F.2d at 1370.

Here, neither party has asserted any federal rights for this Court to protect.[2]  However, "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action." *Id.* Accordingly, this factor of the *Colorado River* doctrine analysis does not weigh in favor of abstention.

### 5. Forum Shopping

Forum shopping is the practice of choosing the most favorable jurisdiction or court in which a claim might be heard. *R.R. Street & Co. Inc.*, 656 F.3d at 981.  In the context of the *Colorado River* doctrine, the Ninth Circuit has held "forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indemn. Co.*, 914 F.2d at 1371.  When determining whether forum shopping is present, courts consider the vexatious or reactive nature of either the federal or state litigation. *R.R. Street & Co Inc.*, 656 F.3d at 981.

Here, Defendant asserts that Plaintiffs' filing of the present lawsuit was reactive in nature. (*Colorado River* MTD 8:7–8, ECF No. 12).  Although Plaintiffs filed the Nevada action two months after Defendant filed the Colorado Action, (*Id.* 8:3–5), Plaintiffs were not

---

[2] Defendant does argue, as a matter of federal-state comity, that the Court should stay the case at bar pending the Colorado court's decision regarding its ability to exercise personal jurisdiction over Plaintiffs. (*Colorado River* MTD 7:16–19, ECF No. 12).  However, "[t]he *Colorado River* doctrine is . . . not an abstention [doctrine] based on federal-state comity." *Henderson v. Bonaventura*, No. 2:13-cv-01921-RCJ-VC, 2014 WL 1573764 at *4 (D. Nev. April 17, 2014) (citing *Moses H. Cone*, 460 U.S. at 14–15).  Therefore, federal-state comity is an inappropriate justification for federal abstention in the present case.

abandoning any substantial litigation already underway in Colorado. *See American Intern. Underwriters*, 843 F.2d at 1259 (finding forum shopping where a plaintiff abandoned its state court case after two and a half years of litigation because the Federal Rules of Evidence were more favorable to it than the state evidentiary rules) . Additionaly, there were no rulings in the Colorado Action when Plaintiffs filed their lawsuit in Nevada state court. (Resp. to *Colorado River* MTD 9:6–7). As such, it does not appear that Plaintiffs were attempting to avoid any adverse state court rulings by filing a lawsuit in Nevada. Moreover, this action was originally filed in Nevada state court, and Defendant, not Plaintiffs, removed this action to the federal forum. (Not. of Removal, ECF No. 1). Therefore, this action is no longer in Plaintiffs' chosen forum, and no inference can be drawn that Plaintiffs filed this action seeking to gain a tactical advantage from the application of federal court rules. Accordingly, the Court finds that this factor does not weigh in favor of abstention.

### 6. State Court's Ability to Resolve all Issues Presently Before Federal Court

The final factor of the *Colorado River* analysis requires that the state and federal proceedings be substantially similar so that the state court posseses the ability to resolve the federal action. *R.R. Street & Co.*, 656 F.3d at 982. "We require a parallel suit to ensure comprehensive disposition of litigation . . . [o]therwise, a stay or dismissal will neither conserve judicial resources nor prevent duplicative litigation." *Id.*

Here, Plaintiffs concede the counterclaims raised in the Colorado Action are "similar" to the claims in the present action. (Sec. Interim Stat. Rep. 2:17–20, ECF No. 36). However, the parties have not shown— and it is not apparent—that the Colorado Action will ensure comprehensive disposition of this litigation. The parties have not provided the Court with the counterclaims raised in the Colorado Action. Further, it is not apparent that the Colorado state court has decided any substantive issues in the Colorado Action. Accordingly, the Court finds that this factor does not weigh in favor of abstention.

### 7. *Colorado River* Doctrine Conclusion

After "a careful balancing of the [relevant] factors . . . with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, the Court concludes that a stay or dismissal pursuant to the *Colorado River* doctrine is not currently warranted in this case. This case does not present exceptional circumstances that clearly justify the Court's abstention from exercising jurisdiction. For this reason, Defendant's Motion to Stay or Dismiss pursuant to the *Colorado River* doctrine is **DENIED**.

### B. Federal Rule of Civl Procedure 12(b)(6) Dismissal

Defendant also moves to dismiss Plaintiffs' claims for intentional interference with prospective economic advantage, abuse of process, negligent misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment under Federal Rule of Civil Procedure 12(b)(6) for failing to adequently state a claim on which relief can be granted. (12(b)(6) MTD 4:19–23, ECF No. 14). The court will address the adequacy of each of these claims in turn.

### 1. Intentional Interference with Prospective Economic Advantage

A *prima facie* showing of intentional interference with prospective economic advantage requires: (1) a prospective contractual relationship between the plaintiff and a third party, (2) defendant's knowledge of the prospective relationship, (3) intent to harm the plaintiff by preventing the relationship, (4) the absence of privilege or justification by the defendant, and (5) actual harm to the plaintiff as a result of the defendant's conduct. *J.J. Industry, LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Plaintiffs allege that they had a prospective contractual relationship with the State of Nevada because of the possibility that the State of Nevada would issue Plaintiffs a license to operate a medical marijuana dispensary. (Compl. ¶ 55, ECF No. 1-3). However, Plaintiffs have not provided and the Court has not found, any case law providing that a state's issuance of a

license creates a contractual relationship between the licensee and the state.  To the contrary, courts have viewed state-issued licenses as an exercise of a state's regulatory power, and not as a creation of contractual relations between the state and the licensee. *See Vari-Build v. City of Reno*, 596 F.Supp. 673, 679 (D. Nev. 1984) (finding a city-issued license confers no contractual rights upon the licensee); *see also Rosenblatt v. California State Board of Pharmacy, Dept. of Professional and Vocational Standards*, 158 P.2d 199, 202 (Cal. 1945) ("The general rule . . . appears to be that a license from the state issued in the exercise of its police power permitting the doing of that which without the license would be unlawful, is not a contract . . . ."); *U.S. Ecology, Inc. v. State of California*, 111 Cal. Rptr. 2d 689, 702 (Cal. Ct. App. 2001) ("A license merely permits an entity to pursue a regulated activity, and has none of the elements of a contract").

Because a state-issued license does not create a contract, Plaintiffs' claim for intentional interference with prospective economic advantage fails as a matter of law, and amendment of this claim would be futile.  Accordingly, the Plaintiffs' intentional interference with prospective economic advantage claim is dismissed with prejudice.

### 2. Abuse of Process

An abuse of process claim requires a plaintiff to show: (1) an ulterior purpose by the defendants in filing the action other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding. *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).  An ulterior purpose is any improper motive underlying the issuance of legal process. *Posadas v. City of Reno*, 851 P.2d 438, 457 (Nev. 1993).  The mere filing of a complaint is insufficient to establish the tort of abuse of process. *Laxalt v. McClatchy*, 622 F.Supp 737, 752 (D. Nev. 1985).

Plaintiffs allege Defendant filed the Colorado Action in an attempt to interfere with Plaintiffs' further efforts to obtain licenses to operate medical marijuana dispensaries in Nevada.

(Compl. ¶¶ 64–65, ECF No. 1-3).  Plaintiffs, however, do not detail how filing an action in Colorado interfered with their ability to obtain licenses in Nevada.  Further, Plaintiffs do not adequately plead the second element of this claim because Plaintiffs do not indentify any willful improper act taken by Defendant in the regular conduct of the legal proceeding.  Without more specificity as to how Defendant's Colorado Action filing would interfere with Plaintiffs' ability to obtain Nevada licenses or what which of Defendant's willful actions were improper, Plaintiffs' conclusory statement that Defendant had an ulterior purpose in filing the Colorado Action is insufficient to survive a motion to dismiss.  Accordingly, Plaintiffs' claim abuse of process claim is dismissed.  However, because amendment does not appear to be futile at this time, this dismissal is without prejudice.

### 3. Negligent Misrepresentation

Nevada has adopted the Second Restatement of Torts' definition of negligent misrepresentation, which states:

> One who, in the course of his business, profession, or employment, or in any other [trans]action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to the, by their justifiable reliance upon the information, if he fails to exercise reasonable care . . . in obtaining or communicating the information.

*Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978) (quoting Restatment (Second) of Torts § 552 (1977).  However, Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine.  This doctrine bars unintentional tort claims when a plaintiff seeks to recover purely economic losses under a contract. *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 933 F.Supp.2d 1279, 1283–84 (D. Nev. 2013).  The economic loss doctrine exists to prevent contract law from drowning in a "sea of tort." *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866 (1986).  "Thus, the doctrine provides that certain economic losses are properly remediable only in contract." *Peri & Sons Farms*, 933 F.Supp.2d at 1283.  Nevada

has defined the economic loss doctrine as "the loss of the benefit of the user's bargain including pecuniary damage for all inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Id.* (citing *Calloway v. City of Reno*, 993 P.2d 1259 (Nev. 2000)).

Plaintiffs do not seek recovery for any property damage or personal injury. Instead, Plaintiffs seek monetary damages for potential lost profits resulting from their failure to obtain a license to operate a medical marijuana dispensary. (Compl. ¶¶ 79–80, ECF No. 1-3). This type of recovery is purely economic, and Plaintiffs do not allege any additional losses resulting from personal injury or property damage. Accordingly, Plaintiffs' negligent misrepresentation claim is dismissed with prejudice in accordance with Nevada's economic loss doctrine.

### 4. Breach of Contract

In Nevada, to succeed on a claim for breach of contract a plaintiff must show: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway*, 993 P.2d at 1263 ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement"); *see also Brochu v. Foote Enterprises, Inc.*, No. 55963, 2012 WL 5991571, at *5 (Nev. Nov. 29, 2012) ("To prove a breach of contract, the plaintiff must show an existing valid agreement with the defendant, the defendant's material breach, and damages.").

Plaintiffs have sufficiently pled the elements for a breach of contract claim. Plaintiffs allege: (1) a contract existed between themselves and Defendant to pursue a license to operate a medical marijuana facility in Nevada; (2) Plaintiffs performed on the contract by paying Defendant $20,000 for his work in advance of the license due date; (3) Defendant breached the terms of the parties' contract by producing subpar work product and failing to remedy the work

product prior to the application deadline; and (4) Plaintiffs were damaged as a result of Defendant's breach of the contract because they did not obtain a license to operate a medical marijuana dispensary in Nevada. (Compl. ¶¶ 35–46, ECF No. 1-3).  Accordingly, Plaintiffs' breach of contract claim survives.[3]

### 5. Breach of Implied Covenant of Good Faith and Fair Dealing

To succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must show: (1) plaintiff and defendant were parties to an agreement; (2) defendant owed a duty of good faith to the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (per curiam).  In Nevada, an implied covenant of good faith and fair dealing exists in every commercial contract, *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (per curiam), and a plaintiff may assert a claim for its breach "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991).

Plaintiffs have sufficiently pled the elements for breach of implied covenant of good faith and fair dealing through alleging the following: (1) Plaintiffs and Defendant were parties to an agreement to pursue a license to operate a medical marijuana dispensary in Nevada; (2) through

---

[3] Defendant argues Plaintiffs' breach of contract claim fails because it runs contrary to arguments Plaintiffs raised in another case. (12(b)(6) MTD 9:22–26, ECF No. 14).  In that case, Plaintiffs brought suit against the State of Nevada for failing to issue Plaintiffs a license to operate a medical marijuana dispensary. (*Id.* 9:12– 13).  Plaintiffs' founding member provided testimony in that case, stating the State of Nevada's licensing process was "unlawful, arbitrary, and . . . clearly erroneous." (*Id.* 9:18–22).  In essence, Defendant urges the Court to dismiss these claims by departing from the FRCP 12(b)(6) standard and considering evidence outside of the complaint. However, this departure is only appropriate when: "1) the complaint refers to the document; 2) the document is central to the plaintiff's claim; and 3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 445 F.3d 445, 448 (9th Cir. 2006) (citing *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994) (overruled on other grounds)).  Because none of these exceptions apply here, the Court will not look to the contents of Plaintiffs' affidavit in determining whether dismissal is proper for the breach of contract claim.

being party to this agreement, Defendant owed a duty of good faith to Plaintiffs; (3) further, Defendant performed in a manner that was unfaithful to the purpose of the contract when Defendant failed to produce the work product that was of the caliber he represented to Plaintiffs that he was capable of producing; and (4) due to Defendant's representations, Plaintiffs were justified in expecting they would obtain licenses to operate a medical marijuana facility in Nevada, but did not obtain these licenses. (Compl. ¶¶ 47–53, ECF No. 1-3).  Accordingly, Plaintiffs' breach of implied covenant of good faith and fair dealing survives.

### 6. Unjust Enrichment

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefore." *Leasepartners Corp v. Robert L. Brooks Trust Dated November 12, 1975*, 942 F.2d 182, 187 (Nev. 1997).  "Under Nevada law, unjust enrichment occurs whenever a person has and retains a benefit which, in equity and good conscience, belongs to another." *West Charleston Lofts I, LLC v. R&O Const. Co.*, 915 F.Supp.2d 1191, 1196 (D. Nev. 2013).

Here, Plaintiffs have adequately pled a claim for unjust enrichment.  Plaintiffs allege Defendant was paid $20,000 for work to be performed under the agreement. (Compl. ¶ 15, ECF No. 1-3).  Plaintiffs further allege Defendant did not adequately perform the work under the agreement, leaving Plaintiffs to complete Defendant's work in anticipation of an impending deadline because Defendant was on vacation and could not be reached to remedy his defective work product. (*Id.* ¶¶ 25–28).  These allegations are factually specific and sufficient to survive a motion to dismiss.  Accordingly, Plaintiffs' unjust enrichment claim survives.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion to Stay or Dismiss pursuant to the *Colorado River* (ECF No. 12) doctrine is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 14) is **GRANTED in part** and **DENIED in part**. Plaintiffs' claims for intentional interference with prospective economic advantage and negligent misrepresentation are dismissed with prejudice.  Plaintiffs' claim for abuse of process is dismissed without prejudice.  Finally, Plaintiffs' claims for breach of contract, breach of implied covenant of good faith and fair dealing and unjust enrichment survive Defendant's Motion to Dismiss.

**IT IS FURTHER ORDERED** that Plaintiffs shall have twenty-one (21) days from the date of this Order to file an amended complaint to correct the deficiencies relating to their abuse of process claim.  Failure to file an amended complaint by this deadline will result in dismissal of that claim with prejudice.

**DATED** this 19th day of August, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court